| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

ROSENDO ROBERTS,

                       **Plaintiff,**

     **v.**

**LOCKHEED MARTIN CORP. and
JOHN DOE, INC.,**

                   **Defendants.**
_____

**1:23-cv-00005-WAL-EAH**

**TO:**    **John-Russell Bart Pate, Esq.
Korey A. Nelson, Esq.
Warren T. Burns, Esq.
H. Rick Yelton, Esq.**
         *On behalf of Plaintiff*
**Kevin A. Rames, Esq.
Damian S. Jackson, Esq.**
         *On behalf of Lockheed Martin Corp.*

## ORDER DENYING MOTION TO STAY DISCOVERY

**THIS MATTER** comes before the Court on the "Motion to Stay Discovery and the Scheduling Order" filed by Plaintiff Rosendo Roberts. Dkt. No. 22. For the reasons that follow, the Court will deny Roberts's motion.

### BACKGROUND

In August 2022, Roberts, a citizen of St. Croix, filed a Complaint in the Superior Court of the Virgin Islands against Defendants Lockheed Martin Corp. ("Lockheed") and John Doe, Inc., alleging generally that he had been exposed to bauxite and other toxic substances while working at the alumina refinery (the "Refinery") on St. Croix from 1974

to 1978; this exposure and the lack of respiratory protection provided to workers led to Roberts contracting lung disease and other health problems. *See e.g.*, Dkt. No. 1-1.

The Complaint described the various companies that owned and/or operated the Refinery on St. Croix from the mid-1960s-2000. *Id.* ¶¶ 21-25. Harvey Aluminum, Inc. built the Refinery, which refined bauxite ore into alumina, and ran the refining operations. *Id.* ¶ 21. In 1972, Harvey Aluminum. changed its name to Martin Marietta Aluminum, Inc. ("M/M Aluminum."). *Id.* M/M Aluminum succeeded Harvey Aluminum's rights and obligations under the bauxite ore supply agreement. *Id.* ¶ 22. Harvey Aluminum assigned the lease to Martin Marietta Alumina, Inc. ("M/M Alumina") which ran the refining operations. *Id.* M/M Aluminum sold the Refinery to Martin Marietta Aluminum Properties ("MMAP") in 1985; MMAP then sold the Refinery to Virgin Islands Alumina Company ("VIALCO") in 1989. *Id.* ¶ 23. VIALCO was the wholly owned subsidiary of Glencore Ltd. ("Glencore") and operated the Refinery from 1990-1995.[1] *Id.* ¶ 24. Glencore supplied VIALCO and the Refinery with bauxite ore from 1990-1995. *Id.*

At the time when the Martin Marietta companies and VIALCO owned or operated the Refinery, General Engineering Corp. ("GEC") provided construction and maintenance services. *Id.* ¶ 25. Defendant Lockheed is the successor-in-interest to the M/M and Harvey companies. *Id.* ¶ 2. Defendant John Doe, Inc. is Cosmogony, II, Inc., currently in Chapter 7 bankruptcy. Cosmogony is the successor-in-interest to GEC. *Id.* ¶ 3. The Complaint stated that "[Cosmogony] will be added as a Defendant when [the Cosmogony] bankruptcy is dismissed or when any automatic stay is lifted, as the Plaintiff intends to proceed against

---

[1] Glencore is a Defendant in two of the related cases, where the plaintiffs worked at the Refinery at the time that Glencore owned it. *See e.g., George v. Glencore*, 1:22-cv-00056-WAL-EAH; *Arnold v. Lockheed Martin Corp.*, 1:22-cv-00057-WAL-EAH. Glencore is not a party to the instant action.

[Cosmogony's] legacy third-party general liability insurance policies—which are not considered an asset of the estate in bankruptcy." *Id.*

Roberts raised the following claims against Lockheed as successor-in-interest to M/M Corp, M/M Aluminum, and M/M Alumina: (1) Negligent Undertaking; (2) Premises Liability; (3) Chattel Known to be Dangerous for Intended Use;[2] (4) Chattel Unlikely to be Made Safe for Use; (5) Chattel for Use by Person Known to be Incompetent; (6) Chattel Used to Supplier's Business Purpose; and (7) Premises Liability *Id.* ¶¶ 33-130. Roberts also raised a claim of Negligence against Cosmogony as successor to GEC. *Id.* ¶¶ 131-38. He requested a jury trial, as well as damages, punitive damages, pretrial interest, and costs. *Id.* ¶¶ 139-42.

In February 2023, Lockheed removed the case to this Court. Dkt. No. 1. In March 2023, Roberts filed a notice stating that he believed this case—and one other case, also removed in February[3]—should be added to the governing Scheduling Order in six related cases.[4] Dkt. No. 7. Further, the Initial Conference was "not necessary and can be canceled." *Id.* After an informal meeting with the attorneys, the Court agreed to informally consolidate this case with the others and cancel the Initial Conference; it also entered the already-existing Scheduling Order, which was developed based on the parties' representations at the Initial Conference. Dkt. No. 9. As relevant here, at the Initial

---

[2] The specified chattel varies from count to count, but it includes bauxite, refinery machinery and equipment, refinery appurtenances, and heavy equipment.

[3] This other case removed in February 2023 was *Porcil v. Lockheed Martin Corp.*, 1:23-cv-00006-WAL-EAH.

[4] The related cases include *George v. Glencore*, 1:22-cv-00056-WAL-EAH; *Arnold v. Lockheed Martin Corp.*, 1:22-cv-00057-WAL-EAH; *Christopher v. Lockheed Martin Corp.*, 1:22-cv-00058-WAL-EAH; *Garcia v. Lockheed Martin Corp.*, 1:22-cv-00059-WAL-EAH; *McIntosh v. Lockheed Martin Corp.*, 1:22-cv-00060-WAL-EAH, and *Nicholas v. Lockheed Martin Corp.*, 1:22-cv-00061-WAL-EAH.

Conference in February 2023 for the six cases removed earlier, the parties explained that

related litigation was ongoing in the Superior Court. *See* Dkt. No. 56-10 at 10 in *Arnold v.*

*Lockheed Martin Corp.*, 1:22-cv-00057-WAL-EAH (Tr. of Init. Conf.).[5] Specifically, multiple

cases with the same factual bases were being adjudicated in the Superior Court's Complex

Litigation Division under a master case entitled *In Re: Alumina Refinery Toxic Dust Claims*

("ARTDC"), Case No. SX-2022-MC-00027; the first two of these cases were set for trial in

November 2023. Tr. of Init. Conf. at 10; Dkt. No.  23 at 4.[6] Further, the parties advised that

a Chapter 7 bankruptcy case was pending against Cosmogony in the Virgin Islands

Bankruptcy Court. Tr. of Init. Conf. at 9. The parties agreed to request a stay until May

2023 to allow the Bankruptcy Court to possibly dismiss the Cosmogony case.[7] *Id*. at 9, 11,

12. If dismissal was achieved, Roberts planned to seek leave to amend his complaint to

add Cosmogony in place of John Doe, Inc. *Id*. Roberts argued that, if that occurred,

---

[5] This transcript was not requested by the parties in *Roberts*, and thus was not docketed in this case. However, the Initial Conference was  relevant to this case because the parties requested to join the Scheduling Order, and the transcript of the Initial Conference is available at the docket entry specified.

[6] The parties did not provide the case number or this level of detail at the Initial Conference; they generally advised that other litigation existed in the Superior Court. Tr. of Init. Conf. at 10. The additional details are taken from the memorandum in support of the motion to stay. Dkt. No. 23 at 4.

[7] A review of the Bankruptcy Court docket reveals that a motion to dismiss was filed on January 6, 2023 by Roberts's counsel, alleging that the involuntary bankruptcy of Cosmogony was filed in bad faith and on other grounds. Dkt. No. 59 in *In re Cosmogony II, Inc.*, Case No. 1:22-bk-100001-MFW (Bankr. D.V.I.). The motion to dismiss was denied at a January 19, 2023 hearing. Dkt. No. 81 at 31 in *In re Cosmogony II, Inc*. At the Initial Conference in the instant case in February 2023, Roberts's counsel stated only that the motion to dismiss had been "initially denied" but that the matter had been referred to the trustee, who was "inclined to dismiss the case because the debtor hadn't appeared." Tr. of Init. Conf. at 9. Despite the attorneys failing to explicitly discuss the dismissal and implying to the Court that a motion to dismiss remained pending before the Bankruptcy Court, no such motion to dismiss exists. Roberts has not subsequently filed a motion to dismiss in the Bankruptcy Court, nor after the Initial Conference in this Court in February, nor after the status conference in May, nor since the filing of the motion to stay in June.

Cosmogony—as a Virgin-Islands based company—would destroy diversity jurisdiction and the case would likely be remanded to Superior Court. *Id*. at 8-9, 77. The Court inquired whether a lack of progress in the bankruptcy proceedings would impact the instant case; Roberts's counsel responded that he intended to proceed with the case and would not be asking for any extensions of the Scheduling Order. *Id*. at 77.

As discussed above, the Court entered a Scheduling Order identical to the other cases, staying discovery in the case until May 1, 2023. Dkt. No. 9. The Order contained, inter alia, the following deadlines: a status conference on May 4, 2023; written discovery by September 1, 2023; 35 CPE examinations by October 16, 2023; depositions of Plaintiff by November 30, 2023; all other fact witness depositions by January 16, 2024; Plaintiff's experts named and copies of their opinions served by February 1, 2024; Defendants' experts named and copies of their opinions served by March 1, 2024; all expert depositions by April 30, 2024; and trial on February 24, 2025. *Id.*

On May 4, 2023, the Court held a status conference to ensure that the case was progressing appropriately, as the stay had just expired. At that status conference, the Court again inquired as to the status of the bankruptcy proceedings; the parties indicated that they were litigating discovery issues in the Bankruptcy Court. *See* Dkt. No. 56-11 at 6-8 in *Arnold v. Lockheed Martin Corp*., 1:22-cv-00057-WAL-EAH (Tr. of Status Conf.).[8] The Court again inquired whether the delay in the bankruptcy case would impact the Scheduling Order, and all parties confirmed that the current Scheduling Order was appropriate. *Id*. at 8, 9. In fact, Roberts's counsel stated that everything was proceeding

---

[8] Similarly, this transcript was not requested by the parties in *Roberts*, and thus was not docketed. However, the Status Conference was a combined proceeding for *Roberts* and other cases, so the transcript is available at the docket entry specified.

on track and that the current Scheduling Order was still desirable because any discovery taken in this Court could be transferred to the Superior Court case upon remand. *Id*. at 9,10.

On June 16, 2023, more than six weeks after the stay had elapsed and four months after Roberts's counsel stated that he would not be asking for any further extensions of the Scheduling Order related to the Cosmogony bankruptcy, Roberts filed the instant motion to stay,[9] seeking a stay of discovery and all other deadlines in the Scheduling Order until either the Cosmogony bankruptcy stay was lifted or six months had elapsed, whichever time period would be shorter. Dkt. No. 22. In the motion to stay, Roberts opined that the Cosmogony involuntary bankruptcy was "nearing its completion." Dkt. No. 23 at 6. The attorney for GEC/Cosmogony was due to be deposed on June 29, 2023, after which Plaintiff's counsel "intend[ed] to file a renewed motion to dismiss the bankruptcy in short order and dismissal of the involuntary bankruptcy would be expected to occur after full briefing, hopefully sometime in the next couple months." *Id*. at 7. Dismissal would end the bankruptcy stay, at which time Plaintiff could seek leave to amend the complaint to add Cosmogony, which would in turn destroy diversity jurisdiction in federal court. At that point, Plaintiff would seek to remand to Superior Court under 28 U.S.C. § 1447(e). *Id*. at 9.

Roberts argued that an additional stay of this and the other federal court cases would prevent these cases from proceeding without a "primary defendant," i.e., Cosmogony. *Id*. at 9-10. Further, the Court and all parties were aware that Roberts

---

[9] The motion to stay is identical in all cases.

intended to seek remand once the Cosmogony stay was lifted,[10] so that the federal cases could be included in and coordinated with the asbestos/bauxite toxic tort cases proceeding in Superior Court. *Id.* at 10-11. Additionally, no prejudice would result to Defendants[11] where "all parties have plenty of work to do in the ARTDC cases." *Id.* at 13-14. A stay would promote judicial efficiency because: (1) upon remand to Superior Court, these cases would be added to the ARTDC master case rather than be addressed piecemeal; (2) the parties in the ARTDC cases have agreed to a "streamlined plaintiff-fact-sheet form of discovery rather than individual interrogatories and requests for production," and permitting standard discovery in the federal court cases will lead to extra work and  discovery motion practice that could be avoided; (3) this Court would not have to make decisions that could ultimately bind and conflict with Superior Court rulings if this Court lacks jurisdiction to rule; and (4) this Court would not have to draft a new scheduling order to reflect the addition of Cosmogony to the case. *Id.* at 12-13. Finally, to the extent the Court considers its motion under Rule 16(b)(4), Roberts had been diligent in trying to end the Cosmogony bankruptcy. *Id.*

The motion indicated that Lockheed took no position on the requested relief. *Id.* at 2.

### DISCUSSION

Roberts has moved for "a stay of discovery and all other deadlines in the Court's February 7 and March 10, 2023 Scheduling Orders[.]" Dkt. No. 23 at 2.

---

[10] Roberts maintains that all of the remand factors under *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5t h Cir. 1987) would support remand. Dkt. No. 23 at 9, 11.

[11] Roberts spends the majority of his argument discussing the lack of prejudice to Glencore, which is not a party in this action. Dkt. No. 23 at 13-14. The only instance where Roberts mentions all Defendants, and thus, Lockheed, is in arguing that the attorneys in this case are busy with the ARTDC cases. *Id.* at 13.

*Roberts  v. Lockheed Martin Corp.*
1:23-cv-00005-WAL-EAH
Order Denying Motion to Stay
Page 8

## I.    Motion to Stay Standard

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26 does, however, provide that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). It is well settled, though, that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). Matters of docket control and the conduct of discovery have long been "committed to the sound discretion of the district court," *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982), including whether to stay discovery, *Ferguson v. USAA Gen. Indem. Co.*, 334 F.R.D. 407, 409 (M.D. Pa. 2019) (citing, inter alia, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001)). That discretion extends to decisions by U.S. Magistrate Judges. *See Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) (finding that magistrate judge did not abuse his discretion in staying discovery pending review of motions to dismiss the complaint).

Still, motions to stay "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.,* No. 00-2284, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002) (internal quotation marks omitted).

In this Circuit, when deciding whether to exercise discretion to grant a stay, courts weigh four considerations:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

*Ainger v. Great Am. Ins. Co.,* No. 20-cv-00005, 2022 WL 3139079, at * 6 (D.V.I. Aug. 4, 2022) (quoting *Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019)). "[A]dditional considerations arise depending upon the circumstances for which the movant requests a stay," *Akshev v. Kapustin,* 23 F. Supp. 3d 440, 446 (D.N.J. 2014), including judicial efficiency. *See Onyx Enters. Int'l Corp. v. Volkswagen Grp. of Am.*, No. 3:20-cv-09976, 2021 WL 1338731, at *5 (D.N.J. Apr. 9, 2021). "Where a stay is sought pending resolution of purportedly related litigation . . . courts consider whether resolution of the related litigation would substantially impact or otherwise render moot the present action." *Akshev,* 23 F. Supp. at 446 (citing *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976); *Rodgers v. U.S. Steel Corp.*, 508 F.2d 152, 162 (3d Cir. 1975)). Regardless of the specific circumstances, the "party requesting a stay bears the burden of showing that the circumstances justify an exercise" of the Court's discretion. *Nken v. Holder,* 556 U.S. 418, 433–34 (2009).

## II.   Application

As to whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, Lockheed has not opposed Roberts's motion to stay. It follows that it does not consider the stay as unduly prejudicing it or presenting it with a clear tactical disadvantage. This factor weighs in favor of a stay.

As to the second stay factor, denial of the stay would not create a clear case of hardship or inequity for Roberts. In fact, based on the representations of Roberts's counsel at the May 4, 2023 status conference, engaging in discovery with Lockheed would not impose any additional hardship for Roberts even if Cosmogony was later added and the case remanded, because the discovery could be used in the Superior Court proceedings. *See* Tr. of Status Conf. at 9; *cf. Annulli v. Panikkar*, 200 F.3d 189, 203 (3d Cir. 1999) (affirming the district court's decision to decline to exercise supplemental jurisdiction over state law claims in part because plaintiff could use the extensive discovery conducted as evidence in his state law claims pending in state court). Moreover, if the case is not remanded, it is in both parties' interests to proceed expeditiously with discovery in this case. This factor does not weigh in favor of a stay.

In addressing the simplification prong, Roberts contends that "when the stay of discovery will actually support judicial efficiency and case management, it is proper." Dkt. No. 23 at 8 (citing *Xinuos, Inc. v. Int'l Bus. Machs. Corp.*, No. CV 2021-31, 2022 WL 1224445, at *1 (D.V.I. Apr. 26, 2022)). Specifically, he argues that a stay would promote judicial efficiency where: (1) upon remand to Superior Court, these cases would be added to the ARTDC master case, with its streamlined discovery and therefore permitting standard discovery in the federal cases will lead to avoidable discovery motion practice; (2) this Court would not have to make decisions that could conflict with Superior Court rulings; and (3) this Court would not have to draft a new scheduling order to reflect the addition of Cosmogony to the case. *Id.* at 12-13. In making these arguments, Roberts implicitly posits that (a) his not-yet-filed motion to dismiss the bankruptcy case will be granted, and he expects that decision "soon," (b) the bankruptcy stay would then be lifted so he could seek leave to amend his complaint to add Cosmogony in place of John Doe, Inc.; (c)

after he amends his complaint he would file a motion to remand; and (d) the Court would

grant the motion to remand and the case will be remanded to Superior Court. *See e.g.,* Dkt.

No. 23. Thus, the federal case will be simplified because it would disappear from the

federal court docket.

      As indicated above, a court may impose a stay where parallel litigation exists and

the outcome of the other litigation would substantially affect or be dispositive of certain

issues in the current litigation, *see Bechtel Corp.,* 544 F.2d at 1215; accordingly, courts

may consider the existence of parallel proceedings and their likely outcomes under the

simplification prong insofar as they would promote judicial economy. *See Akishev*, 23 F.

Supp. 3d. at 448; *Onyx Enters. Int'l Corp.*, 2021 WL 1338731, at *5.

      But the party moving for the stay has the burden of showing the stay would

promote judicial economy. *See ADP, Inc. v. Wise Payments, Ltd.*, No. 21-12457, 2022 WL

2833819, at *4 (D.N.J. July 19, 2022) (citing *Landis* 299 U.S. at 255; *Shaf Int'l, Inc.*, *v.*

*Ultimate Leather Apparel, Inc.*, No. 20-2569, 2021 WL 409757, at *3 (D.N.J. Feb. 5, 2021)).

And this includes making a showing that, here, the bankruptcy proceedings will

"necessarily advance more expeditiously than proceedings before this Court." *Id.* (citing

*PBTM LLC v. Football Nw., LLC*, No. 19-2081, 2022 WL 2208157, at *3 (W.D. Wash. June

21, 2022) (considering the progression of the underlying proceedings before the

Trademark Trial and Appeal Board); *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593

F.2d 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the

other proceedings will be concluded within a reasonable time in relation to the urgency

of the claims presented to the court.")).

      Roberts has not met his burden of showing that a stay would promote the aims of

judicial economy and simplification of the issues. In February 2023, he (and Lockheed)

"reasonably expect[ed]" that the Bankruptcy Court would dismiss the case by April 2023 and they sought an initial three month stay of the instant case, until May 1, 2023. Dkt. No. 14 at 2 in *Arnold v. Lockheed Martin Corp.*, 1:22-cv-00057-WAL-EAH.[12] Roberts's counsel clearly believed that this stay would be sufficient, as he advised the Court that he intended to proceed with the federal case and *would not be asking for any extensions of the Scheduling Order.* Tr. of Init. Conf. at 77. However, the Cosmogony bankruptcy case was not concluded in April 2023, and the stay expired, prompting the instant motion. Roberts asserts that he will be filing another motion to dismiss the bankruptcy case (which had not yet been filed when he filed his motion to stay),[13] and anticipates that the Bankruptcy Court will address it "soon." Dkt. No. 22 at 9. He nevertheless asks for an additional six-month stay of proceedings (double the amount of time previously requested) within which he expects the Bankruptcy Court to rule.

However, at this point, nothing is before this Court that supports Roberts's guesstimate that six months will be sufficient for the Bankruptcy Court to rule on the motion to dismiss that Roberts intended to file after the June 29, 2023 deposition of Cosmogony's former counsel. *Id.* at 7. A review of the Bankruptcy Court docket[14] shows that that deposition had been moved to July 6, 2023, and no motion to dismiss has been filed since. Thus, the Court has no confidence in Roberts's estimated timeline for resolution of the yet-to-be-filed motion to dismiss.

---

[12] This information comes from the identical discovery memorandum filed in the six cases set for Initial Conference in February 2023. Because this case was removed after the Initial Conference, no discovery memoranda were filed.

[13] The Bankruptcy Court docket shows no motion to dismiss has yet been filed.

[14] Dkt. Nos. 112, 117 in *In re Cosmogony II, Inc.*, Case No. 1:22-bk-100001-MFW (Bankr. D.V.I.)

The Court is unwilling to give Roberts the benefit of the doubt on this point, since the earlier three-month estimation was evidently off base, he affirmatively stated he would not be seeking another extension based on the status of the bankruptcy proceedings, and he reaffirmed in May 2023 that everything was proceeding on track and the current Scheduling Order was still desirable. Tr. of Status Conf. at 9. Thus, the Court is without any guidance as to whether the six-month stay is an actual estimate of when the yet-to-be-filed motion to dismiss will be adjudicated in Bankruptcy Court, and it is not inclined to keep moving the scheduling order goalposts based on nothing more than a guesstimate of when the Bankruptcy Court will address a motion that has yet to be filed.

But even more to the point of whether an additional six-month stay would promote judicial efficiency and simplify the proceedings is the question whether Roberts's argument that a stay is warranted because this case will be dismissed from federal court on jurisdictional grounds has merit. In evaluating this stay prong, this Court has adopted an approach where it takes a "preliminary peek" when deciding whether to stay a case pending resolution of a dispositive motion. This involves a preliminary consideration of the potential merits of the dispositive motion (a motion to dismiss) and an assessment of whether the motion is likely to be granted. The Court has held that this factor favors a stay when the movant makes a "clear and convincing" showing that the motion to dismiss will likely be granted. *See e.g.*, *Mosler v. Cairns*, No. 1:19-cv-00007, 2022 WL 3370731, at *7-8 (D.V.I. Aug. 16, 2022)(taking a "preliminary peek" at merits of the defendant's motion to dismiss and finding simplification factor would result where he had made a clear and convincing showing that it would be granted). While in previous cases, the motion to dismiss that this Court has evaluated for purposes of this factor was filed in the same case, the fact that Roberts intends to file a motion to dismiss in a different

case in Bankruptcy Court is a distinction without a difference, as the outcome of any motion to dismiss is, in the Court's view, key to whether it should grant the stay in the case before it. But here, the Court cannot take a preliminary peek at the merits, because Roberts has not filed a motion to dismiss that is currently pending in the Bankruptcy Court.[15] As a result, Roberts has not met his burden on this prong to show that this factor supports a stay, and this factor does not weigh in favor of a stay.

As to the final stay prong, although discovery is in its infancy, which typically weighs in favor of a stay, *see Xinuos, Inc.* 2022 WL 1224445, at *4, a trial date has been set in this case. In fact, according to Roberts's counsel, the trial date was "Plaintiff's motivation" when negotiating the Scheduling Order with the Defendant. Tr. of Init. Conf. at 65. It was a "firm date" that Plaintiff's counsel did not want to move to ensure that the cases moved towards completion. *Id.* A stay would postpone this carefully negotiated trial date and potentially be incompatible with the District Judge's busy schedule. Thus, in this particular instance, maintaining the trial date weighs against the stay. Moreover, none of

---

[15] Roberts's conclusion that the federal case will be dismissed is based on a number of assumptions—including that he will actually file a motion. His primary assumption is that the motion to dismiss Cosmogony he intends to file in the bankruptcy case will be granted. In failing to file that motion to dismiss, Roberts has not provided this Court with any means to assess the likelihood of its success simply because the motion does not exist as a pending motion before the Bankruptcy Court. Had Roberts actually filed a motion to dismiss Cosmogony in the Bankruptcy Court, in assessing the instant motion for stay, this Court would have assessed, for example, Roberts's explanation of the factual and legal bases for his motion, and why the opposition to the motion would not be meritorious. And because any motion to remand in the instant matter would be dependent on the outcome of the motion to dismiss Roberts intends to file in the bankruptcy case, the Court cannot conclude that, with all of the contingencies that underlie Roberts's position, a stay would simplify the issues in this case and promote judicial efficiency.

the additional reasons proffered by Roberts, such as his diligence in ending the

Cosmogony bankruptcy,[16] weigh in favor of granting a stay.

On balance then, three of the four stay factors weigh against granting a stay.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that Plaintiff's Motion to

Stay, Dkt. No. 22, is **DENIED**.

ENTER:

Dated: July 18, 2023                    /s/ Emile A. Henderson III
                                        EMILE A. HENDERSON III
                                        U.S. MAGISTRATE JUDGE

---

[16] Roberts also framed his motion as one seeking a stay of the entire case, as he seeks to modify all of the deadlines set in the Scheduling Order, not just discovery. He briefly argues that he has shown "good cause" to do so under Fed. R. Civ. P. 16(b)(4) because he has been diligent in trying to end the Cosmogony bankruptcy. Dkt. No. 23 at 14. That conclusory sentence may apply to the bankruptcy litigation, but not to this case. At every point in this litigation, and as recently as May 2023, Roberts stated he was ready to proceed, regardless of the outcome of the bankruptcy proceedings. The stay ended on May 1, and six weeks later, Roberts reversed his position, seeking another stay. He provided no explanation for delaying the filing of the motion to stay for six weeks, despite the continued existence of the bankruptcy proceedings. This does not indicate diligence on his part. *See Hadeed v. Adv. Vascular Res. of Johnstown, LLC,* No. 3:15-cv-22, 2017 WL 4286343, at *4 (W.D. Pa. Sept. 26, 2017) (finding no due diligence where defendants did not explain the delay in filing a motion to modify). Thus, he has not established good cause.